Good morning. May it please the Court, Michael Tanaka, Deputy Federal Public Defender, appearing on behalf of Mr. Estrella. The issue in this case is whether Mr. Estrella is entitled to habeas relief based on the clear Apprendi Error. There are two predicate issues that are implicated here that I'm not going to discuss unless the Court wants to have a full discussion, and that's whether there was Apprendi Error, and second, does the AEDPA bar relief. Those two issues are controlled by this Court's decision in Butler v. Curry, and although the State has argued that that decision has been undercut by Richter, I believe it clearly has not. So that brings me to what's really at issue here, and that's whether the clear Apprendi Error was harmless in this case. Let me just ask you this question. Is a probation report never sufficient for finding an Apprendi Error harmless? I'm sorry, Your Honor, I didn't hear the question. Is a probation report never sufficient for finding an Apprendi Error harmless? That's our position, Your Honor, and the reason for that... Can you keep your voice up, please? The reason for that is that even Butler noted that if you could consider evidence at sentencing, and my emphasis here is on evidence, a probation report is not in any sense evidence. Recall that Apprendi Error fundamentally is the error that the defendant's been deprived of a jury determination beyond a reasonable doubt. It's a trial error of the issue. Whatever's at issue here would be whether he was on probation at the time of offense or parole at the time of offense. Can we look at the probation report? I assume you can look at it, but to the extent that it doesn't contain any admissible evidence, then it's not... You can't consider it... Any inadmissible evidence. If there's something in the probation report, and it escapes me what that could be, that is verifiable, documented, admissible-type evidence, then under Butler, at least, this Court can consider that and determine whether the error was harmless. So what do we do about the language in Butler which says the reviewing court can look, has to, must look at the whole record, including what was introduced at sentencing, and specifically refers to probation reports as one of the things that should be reviewed in determining harmlessness? I would suggest that that observation in Butler was not well considered. It's certainly not a holding. It suggests that there's a probation report that wasn't brought to anyone's attention, but it doesn't say, and on remand, you can consider that probation report for whatever. I mean, it was speculative. Assuming that there is something in a probation report that rises to the level of admissible evidence, then there would be nothing wrong with that observation. Absent that, and in this case we don't have that, the probation report is the type of probation report that just lists a bunch of information, and with respect to probation doesn't source any of it, and it's not even clear. Counsel, Judge Gould, if I could interject with one question, please. When you sort of carve out something in a probation report that would rise to the level of admissible evidence, I'm trying to understand what you mean because, and maybe I'm missing something, but wouldn't every probation report always be hearsay? So how would it rise to the level of admissible evidence? I think I prefaced my answer that I couldn't think of anything in a probation report that might rise to that level. Not to say there isn't. Suppose, I mean, I guess it's possible that the probation report could have attached to it something like parole records or court documents or something to that nature that indicates something that's traditionally noticeable that would be considered evidence in its own right, and in that case, even though it's in the probation report, presumably it could be considered. But absent something of that character, our position is no. But you're really saying, then, we can never look at the probation report, even to under-bunker the totality of the circumstances, because the court could look at court records anyway. So are you suggesting, then, that the court can never look at the probation report? Well, the answer, again, is it can look at the probation report, but it can't consider the probation report unless there's something appended to or attached to that probation report that rises to the level of admissible evidence. And, counsel, you might have more experience on this than I do, but on the records I've looked at on these appeals, I've never seen a probation report that had, for example, an attached sworn affidavit or something. They always just sort of summarize what people say, so they have the hearsay problem. My experience is the same as yours, Your Honor. I've not seen a probation report that does have that kind of attachment to it that I would consider sufficient and rising to the level of admissible evidence. So realistically, then, your client's position would require us to rule that it appears you just can't take into account the probation report. In the absence of something that many of us have seen, yes, but I'm not willing to. And what's your authority for that? Well, authority rises from first principles under Apprendi, that the entire rationale of Apprendi and Blakely is that the defendant has been deprived of a jury determination based on admissible evidence. We're not talking about some absolute truth here. It's what the jury could have determined based on what was before it in a trial subject to all the trial rights, and the point being that the jury could only consider admissible evidence. In the briefs, you seem to rely heavily, say, on the Laughlin case, but there was no probation report in that case, was there? No, there wasn't. The Laughlin just stands for the broader principle that in determining harmlessness of error, you look at what was presented at trial. And you seem to rely on Smith, and Smith did involve Apprendi errors. So that's why I was asking what your authority is for your statement. Again, it just flows naturally from the principle of Apprendi. It flows from Apprendi. I understand your argument. All right. Again, the suggestion that Butler didn't hold, so this Court is not bound by it to the extent that it said that we're missing a probation report here, suggests that you can look at a probation report, but it didn't say that, and there's certainly no analysis on that point. It didn't consider a hearsay question, didn't consider whether any part of the probation report might be admissible evidence. It's just sort of an observation, and it didn't come back, so we don't know what that Court would have done with the issue had it been presented. But the issue that's presented here was not squarely before Butler, so this Court is free to make its own independent determination of that. Would you like to save the rest of the time for rebuttal? You're from the government. Thank you. Deputy Attorney General Matthew Mulford, on behalf of the state, which I might distinguish from your government as a different sovereign. On habeas, I think that is an important distinction to make. On a different government, I'm here for the state, and so when Mr. Tanaka starts talking about Apprendier, this isn't Apprendier. This is Cunningham Air, and so Cunningham Air comes later in time, and so Mr. Estrada cannot get relief for Cunningham Air. Apprendier is not air in California at all. Doesn't Butler, though, say that it was clearly established before Cunningham? Are you saying that there wasn't an Apprendier in this case at all? Yes. We're saying there is. Apprendy comes first. It's pretty clear from this Court's cases that Apprendy is not binding on California decisions. Butler says that the Blakeley decision is binding on California decisions, and we acknowledge that, but we think Butler has been undercut by Richter. Now, I don't want to belabor this point, but we're talking about habeas. We're not talking about a direct appeal. We're not talking about admissibility of records under the federal rules of evidence. We're talking about a slightly different question, and I think it matters in this case. Let me just ask a question. Why should we defer to the decision of the California Court of Appeal that the maximum sentence was the upper term? What about Blakeley? My answer is that at the time the California Court of Appeal said that the upper term was okay, it was reasonable. Even if erroneous, it was reasonable to think that Blakeley was not binding on California. And that's the answer. If this Court disagrees and wants to follow Butler, I have no problem with that. We're sort of bound by Butler, aren't we? Well, not necessarily. What specifically in Richter undercuts the specific language of Butler saying state court unreasonably applied Apprendi and Blakeley by sentencing Estrella to the upper term? Because Richter changes the way this Court should approach that question. And that's our argument, and I don't want to waste a lot of time on that. And let's move on to the harmlessness issue. Before addressing the points that Mr. Tanaka raised, there are two reasons why this case can be harmless. And there is a second reason that Mr. Tanaka did not address. A jury, in fact, in this case made a finding that there was a prior conviction involving Mr. Estrella and his wife, it's the 2000s aggravated assault conviction. The jury, in fact, made a finding that he committed a new crime involving the kidnapping, which is the one he was sentenced for. And had they been asked under any standard of harmless error analysis, they would have found that he was a serious danger as applied by the trial court. And that ruling by the district court, by the trial court, as almost found by the jury, means that Mr. Estrella's sentence is fine and the judgment should be affirmed. So you're saying one of the other factors, you would say that the jury found beyond a reasonable doubt that one of the other factors pertained. Is that correct? We made that argument, but even if they did not find it beyond a reasonable doubt, had they been asked, they would have. And that's the test under Nader and Requenco. And certainly, for our purposes of harmless error analysis, on habeas under Brecht. So the second jury finding is harmless under Brecht because what they actually found, based on the evidence that was actually presented to them, and I do not believe Mr. Tanaka's brief in the reply even discusses this fact. Now, turning to the different question of the probation report and whether that can be considered, the case law says that everything can be considered, with the possible exception of a defendant's admissions made for the first time in a sense. At least that's my take on it. So a probation report obviously would fit into that. And there's a separate question as to admissibility of evidence and whether hearsay evidence could be considered for harmless error purposes. And our answer for that is if there has been an objection at the time of sentencing to whatever evidence is presented, that objection, if improperly overruled, would be a legitimate basis to not consider that evidence for harmless error analysis. But if the evidence comes in, and no one says anything about the evidence, and the prosecutor has no opportunity to fix or cure an evidentiary problem such as hearsay, then on harmless error analysis, we can look at it. It came in. No one disputes it. I think that is especially true under 2254 and on habeas, where these findings of facts are now presumed to be correct. There is no indication that Mr. Estrella was not on parole, and so it does no harm whatsoever to sentence him as if he were a parolee, particularly when we do have court records that were in fact considered by the judge that say he was on parole. What's puzzling, of course, is that in the sentencing proceeding, the evidence is coming in for a different purpose, and the judge can find it by a preponderance of the evidence. And then to translate that to address the question whether it's more likely than not that a jury would have found beyond a reasonable doubt this fact, based on the evidence at sentencing, seems a bit puzzling. If the evidence was admissible for sentencing reasons, why would the defendant have objected? Well, in this case, there were no objections at all. There were no objections, and I think this is a good example of why we can look at it in a case like this. But, for example, if you consider Mr. Blakely's case, he objected and said, I need a jury to find this, and you can't do this on your own. And the prosecutor, in that type of situation, would be unnoticed. That, okay, now we've got questions about admissibility and standards and burdens and all those other things. And if properly preserved at the trial and at the sentencing hearing, I think that would make a different result possible, and sort of something that Mr. Tanaka is arguing for, on a harmless error analysis later. If the judge got it wrong, if the trial judge confronted with all the things and evaluated what was going on, made the wrong call. But when that objection is not made, and when the issue is not preserved, and the evidence comes in without any hint that it's not reliable or incorrect or factually unsupported, then, of course, harmless error analysis should be able to look at it, and especially under Brecht and on habeas. What do we do about Lachlan? How do you distinguish Lachlan, where I think it was an indictment was introduced? I'm sorry, I don't recall that case. Could you give me a little bit about it? In Lachlan, there was an indictment that was introduced, and the court held that the indictment couldn't be considered in determining whether the evidence that's used at trial is supported at a jury finding. I apologize, Your Honor, I'm not familiar with the case. An indictment, I presume you're talking about a federal case, so I would be even less inclined to opine on it. But in a state indictment or a state charging document, the jury is entitled to consider that, but it's not evidence. So that's my best guess, and I apologize for not being better prepared on that. I have nothing further. Thank you. I just want to address two points raised by counsel for the state. First, he suggested that the lack of an objection to inadmissible hearsay evidence that sentencing might somehow preclude arguments that I was making. And what that does is transform what we're talking about. We're talking about Blakely, a premier year that occurred. It's a jury-type year. We're not asserting that the judge got it wrong or that the judge's determination was wrong. It sort of, in a way, kind of highlights why it seems so wrong to look at the evidence and reduce that sentencing for a different purpose under a different standard of proof to consider whether this error was harmless. Second, he raised the issue of whether some of the other factors might support a harmless error, finding specifically that Mr. Estrella was a serious danger to society. And, again, the response is that we just don't know because that type of question is not, you know, we can sit here and say, well, maybe we think he was a serious danger or maybe the judge might have thought he was a serious danger. But based on the evidence before the jury, you can't tell beyond a reasonable doubt. You can't know either way which way they would come out on that. That's kind of an ambiguous sort of concept. And it was precisely why, and one that the defense had no incentive to counteract,  So it's not the kind of thing you can second guess here and say, well, we would have found that. That's just not the standard. Let me just make it clear. Laughlin does not stand for the proposition that harmless error review of an apprendee error is limited to admissible evidence, does it? It doesn't appear to stand for that proposition, which appears to be your strongest argument. It doesn't stand for that proposition, but obviously nothing in it countermands that proposition. Thank you. Thank you. The case of Estrella v. Ollison is submitted. And we'll next hear the case of United States v. Alcala-Sanchez.
judges: Nelson, Gould, Ikuta